# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| W.R. STARKEY MORTGAGE, LLP, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-219 |
| | § | Judge Clark/Judge Mazzant |
| CHARTIS SPECIALTY INSURANCE CO., | § | |
| f/k/a AMERICAN INTERNATIONAL | § | |
| SPECIALTY LINES INSURANCE CO., and | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| LONDON | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Chartis Specialty Insurance Co.'s Motion to Strike Expert Testimony (Dkt. #92). Having considered the relevant pleadings, the Court finds Defendant's motion is denied.

## BACKGROUND FACTS

In November of 2009, two separate legal proceedings were initiated against Starkey relating to Starkey's mortgage lending operations in North Carolina. Those actions alleged that "Starkey failed to verify the consumers' financial information… and [that] because of this failure, Starkey improperly extended credit to consumers who could not afford to pay the loans they received" (Dkt. #92 at 1 (citing Dkt. #89 at 14)). On June 26, 2013, this Court found that "all of the alleged misconduct [in the two underlying North Carolina lawsuits] constitutes professional services," and ruled that Chartis had no duty to pay Starkey's defense costs in those actions (Dkt. #89 at 16). Chartis filed the present motion to strike, alleging that the expert testimony of James Butler ("Butler") is irrelevant because the Court has already determined the issue on which Butler will provide testimony. Chartis argues that Butler's testimony seeks to undermine a prior order of this Court, and is irrelevant to any fact issue in the case.

1

On August 16, 2013, Defendant filed its Motion to Strike Expert Testimony (Dkt. #92). Plaintiff filed its response on August 23, 2013 (Dkt. #95). Defendant filed its reply on September 10, 2013 (Dkt. #100).

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2)

whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

## ANALYSIS

Defendant moves to exclude the testimony of Butler, arguing that Butler's opinion testimony is an impermissible attack on this Court's prior order holding that Starkey's failure to verify consumer financial information required specialized knowledge and was a professional service. Defendant also argues that Butler's report and testimony are not relevant because the testimony will not assist the trier of fact in understanding the evidence or determining a fact in issue.

"When expert testimony has been challenged, it is incumbent upon the court to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant." *Allison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 (E.D. Tex. May 21, 2003). To be admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or

to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. FED. R. EVID. 702. The party offering the expert testimony has the burden of establishing by a preponderance of the evidence that the challenged testimony is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Defendant contends that this Court has already determined that all of the allegations in the underlying North Carolina litigation relate to Starkey's professional services. In addition, Defendant argues that Butler's opinion and testimony are irrelevant because the Court concluded that even if "not all tasks required to perpetuate [Starkey's] fraud were technical or specialized in nature," that would not be "dispositive because rendering any professional service 'invariably involves menial tasks'" (Dkt. #89 at 17). Butler's report opines that "the verification of mortgage loan application information is a clerical function as opposed to a function that involves executive decision making for which specialized training or licensing is required" (Dkt. #92, Ex. B at 2).

Starkey contends that, under Texas law, the duty to defend and the duty to indemnify are "distinct and separate duties," and the duty to indemnify depends on the actual facts establishing liability in the underlying matter (Dkt. #95 at 1 (citing *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743-44 (Tex. 2009)). Starkey argues that whether the services at issue were professional services or clerical functions is a fact issue, and that Butler's report is relevant to determining this fact issue. The Court agrees. The Court determined that in the context of the duty to defend the professional services exclusion applied. However, in determining whether a duty to indemnify exists, actual facts may be considered to determine liability in the underlying matter. Thus, the Court finds that Defendant's motion is denied.

4

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Chartis Specialty Insurance Co.'s Motion to Strike Expert Testimony (Dkt. #92) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 12th day of November, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE